Good morning, Your Honors. May it please the Court, Counsel. My name is Matthew McHenry, and I represent the appellate in this matter. And, Your Honor, this morning I'd like to start with the Ferretta issue. Now, this Court, as recently as last year, in Mendez-Sanchez, recently reaffirmed its prior holdings, that a defendant's Ferretta waiver must not only be knowing and intelligent, but also unequivocal. And it's, of course, the government's burden to establish the validity of the Ferretta waiver. And this Court has to indulge every reasonable presumption against that waiver. And unlike the defendants in the cases cited by the government, particularly Garrison and the case that came out last week, actually, U.S. v. Johnson, Mr. Williams was far from unequivocal about his Ferretta decision. He was far from adamant about it. He first said he wanted to represent himself. He then said it wasn't so much that he wanted to, but he felt like he was pressed to. He then said he would accept a different lawyer, just not the one he had. And the Court broke for the day. He came back the next morning and had changed his mind again and said that, in fact, he did want to represent himself, and that he would accept his current attorney as advisory counsel. And even the government notes in its brief that there were points when the defendant was wavering in his Ferretta decision. This is far from the adamant and unequivocal decisions that the defendants in Johnson and Garrison had. And it renders his waiver invalid. As this Court said in Mendez-Sanchez, if a defendant equivocates, he's presumed to have requested the assistance of counsel. So his equivocation here, which is pretty clear, he's going back and forth over the course of days. Counsel, I think what's troubling, though, is that his – he did go back and forth. But then after he had a night to, you know, think about it, he came back and his last statement was pretty clear, that he wanted to represent himself, and he accepted the standby counsel. Now this is his last statement. What was equivocal about his last statement? Well, certainly that last statement, Your Honor, was not equivocal. He said, I want to represent myself. But not even 24 hours earlier he had said, I do want counsel. And even as early as that morning. The judge went through a painstaking process here with your client. He demonstrated a plethora of patience with him. And he finally ended up – he had standby counsel right there with him all the time. And, you know, life goes on. Time to time some defendants, they want to postpone trials, you know, create a record maybe, who knows. But I thought this district judge was very careful and very patient and would have welcomed counsel. You know, no trial judge really likes to have a defendant out there in pro pura because it makes your job three times harder. Well, Judge, I agree that Judge Brown went into some pretty – a pretty detailed colloquy with the defendant the day before, covered a lot of ground, even told him right before that that we are going to cover a lot of things right now because of the importance of this waiver. And she was – she was painstaking. She did leave some things out, as we talked about in our brief. She didn't talk about the specific penalties he was facing. Well, she did tell him he faced a 20-year sentence and that he could also be sentenced for the parole violation. That's true. And I'll – can I come back to that, Your Honor, and address what Judge Ferguson was saying? It's – the issue is she covered so much ground that first day that when he came back the second day after changing his mind, rather than just – in light of all the things we covered in that three-hour colloquy the day before, he says, yes. He said, okay, then I'll accept your waiver. What she should have done is what the Court in Johnson did, which was over the course of three Ferretta hearings, constantly reiterated when over and over and over again over the course of three different hearings, the pitfalls of self-representation, the dangers of what he was doing, the penalties he faced, the nature of the rights and protections he was giving up. That's what this Court has decided. That's – that's an example of the sort of ends that a court needs to go to to ensure this waiver is valid. Simply saying, remember what we talked about yesterday, and a simple response from the defendant saying, yes, simply isn't enough in a situation where we're indulging every reasonable presumption against the waiver. I'd ask this Court to look at what the Court did in Johnson, which was constantly reiterating the dangers here. And, Your Honor, in terms of the – the Court did certainly tell the defendant that he was in danger – if he was convicted, he was in danger of a post-prison supervision violation. What she didn't tell him was what the length of that violation could be. And these cases that we've talked about in our briefs, Forrester and some of the other ones, all of those cases actually discuss the importance of being specific about the penalties. In Forrester and Erskine, it was overturned because they weren't detailed enough. They said in Forrester, the defendant was told that it could be 10 years to life when, in fact, it was zero to 20 years. So the government's position that it doesn't really matter whether we tell the defendant exactly the amount of time he's facing isn't supported by these cases, because that was the whole point of these cases. Erskine and Forrester in particular was that they were told specifically the length of time they were facing, and that length of time was wrong. And even when the length of time was overstated, as it was in Forrester, the Court said that's an invalid waiver because he wasn't informed of the specific penalties he was facing. So the other thing I'd like to address with the equivocation issue is that in light of the defendant's equivocation – Are you one of the Federal defenders? Am I? Yeah. I used to clerk there. I'm in private practice now. You sound like one. I'll take that as a compliment, Your Honor. Oh, you should. In light of the equivocation that he was showing over the – over those two days, in addition to that alone rendering his waiver invalid, that should have heightened the Court's awareness. That should have made the Court realize this defendant is on the fence about whether to do this or not. And because of that heightened awareness, the Court should have known. I cannot simply just ask the defendant if he remembers what happened the day before. The Court should have at that point, particularly in light of the equivocation, given him the specifics about the possible sentence he faced on a revocation, should have warned him about the skills and the training that the prosecutor had, should have at least given him some more time, as we see the Court do in Johnson. There was no rush on this. Continuance had been granted. And we didn't have a jury waiting. In light of the equivocation, remember, the Court came in that morning expecting that defendant to accept appointed counsel. And then he said, actually, I want to represent myself again. At that point, the Court should have said, well, I have two panel members here that you can talk to and ensure that this is the right decision, in light of the fact that you now changed your mind for a second time over the course of two days. Okay. Your Honor, I'd also like to briefly discuss the speedy trial issue that we have in the case. Back in 1994, this Court decided U.S. v. Clymer. And that Court agreed that there were certain exceptions to the general rule that all motions filed prior to trial stopped the speedy trial clock. This case is one of those exceptions. Now, Clymer suggested that the tolling statute should only apply if a motion actually delays trial. And that extensive holding has been certainly limited in the case of sins like George and Gorman and Vaux. But we do have a case called U.S. v. Lewis that came out pretty recently, although it was before Vaux, that it was in 2003, and it did apply the Clymer reasoning to a situation where a motion was filed. This motion was actually decided before trial. And the Lewis Court, despite what Gorman and George had to say, applied the Clymer reasoning and said that that particular motion should not have told the speedy trial clock. And that's the situation I think we have here with our motion to stay the civil proceedings. That motion didn't delay the trial in any way. In fact, the Court originally set the hearing for the motion the day after trial was scheduled to begin. When it did continue the trial date, it made no mention at all of this pending motion to stay the civil proceedings. In fact, the Court essentially said affirmatively on the record, I'm not even thinking about this motion this morning. It's on a different calendar. The Court clearly wasn't treating it as a pretrial motion that was related to the criminal case. It was — it had to do with concurrent administrative proceedings that were happening at the same time. This is not a pretrial motion as was intended by the legislature to toll the speedy trial clock. There's a reason that that statute says pretrial motions was tolled, because it's differentiating from pretrial motions and other motions. And this motion to stay the civil forfeiture proceedings was not related to the criminal case. It was — I mean, it's certainly tangentially related, but the judge in her ruling affirmatively stated that that motion to stay is on a different calendar, and I'm not even thinking about it this morning when I'm ruling on these other issues. So for those reasons, Your Honors, our argument is that Clymer should be extended to this case. It is that unique case. We've got a pro se defendant here who filed this motion. It had no effect on the schedule of the trial at all. We've got affirmative statements from the judge saying I'm not even thinking about this in terms of the trial dates that I'm setting. She, in fact, said it originally be heard after the original trial date was scheduled. And for those reasons, I think this Court should apply the Clymer reasoning. Okay.  I think that's a fair argument. What is your computation? I'm sorry? What is your computation? Well, our computation, if you include the — if you don't include the motion to stay, if you say that didn't speed — that didn't toll the speedy trial clock, that adds 21 days to the government's calculation of 52 days, which just gets us into 73. And once we're past that 70-day point, that means that when the court did grant the government's motion to continue, it was required — it was required to state reasonably explicit reasons on the record as to why the ends-of-justice provision was met in the statute. The government's position was because the original timeframe was only 52 days, we didn't even have to talk about whether the court had established its reasons, its ends-of-justice reasoning is on the record. Well, if we — if the court accepts the fact that that motion to stay did not toll the speedy trial clock, then the fact that the court clearly didn't make those reasonably explicit findings on the record makes that important. It makes that continuance invalid. That court never stated that, and the government in its brief never even — I won't say conceded, but wasn't able to point to anything on the record where the court made these reasonably explicit findings. I'd like to reserve my final two minutes for rebuttal. All right. Can it please the Court, counsel? Kelly Zusman, appearing on behalf of the United States. First, I have to address the Feretta issue. And the defendants claim that there was sufficient equivocation here, that Judge Brown should not have accepted Mr. Williams' affirmative statement to her that he wanted to proceed as his own counsel. I would point the court to the record S.E.R. 68, where on the second day when Judge Brown reconvenes court and Mr. Williams tells her that he wants to proceed without the new — the new attorney who has shown up to represent him, but instead with his Federal Public Defender, Mr. T.J. Hester, as his standby counsel, Judge Brown asked him again, have you considered the risks? And Mr. Williams' response to the court was this, you laid them all out to me yesterday including Mr. Winehouse, and I accept those risks. This was not a defendant who was a passive participant in the colloquy regarding the waiver of his rights. He actively participated with Judge Brown, and I think the record supports that her determination that his exercise of his right to represent himself was both a knowing and intelligent one, and therefore should be honored. Unless the Court has further questions on Farrell, I'll turn to the Speedy Trial Act issue. On that point, it's our position that this Court's more recent decisions in Peet and Vaux have created a bright line, and that is that any motion filed pretrial tolls the Speedy Trial Clock. This was a motion that was, in fact, filed by Mr. Hester when he was still representing Mr. Williams. The fact that the district court, we acknowledge, she did say when she was discussing the government's motion for a continuance that she was setting that motion aside. She used the term calendar. I think, in fact, we would acknowledge that the motion did not, in fact, have an effect on the trial date, and that it was of a different nature than the motions she was dealing with relative to the setting of the trial date and the Feretta waiver. But in this Court's decision in Peet, it held, we have held that the pretrial motions excludable under the Speedy Trial Act need not actually cause any delay for the time which the motions are pending to be excludable. If you concur that, in fact, that motion to stay in administrative forfeiture pending the resolution of the criminal case tolls the clock, then we have agreement among the parties that, in fact, this trial took place well within that 70-day period. Only if you disagree with that conclusion do you then need to turn to the adequacy of the district court's findings on the government's motion to continue the trial. And there, I think we have a fairly detailed affidavit from the prosecutor explaining why the additional time was needed. The district court, unlike many other cases where this Court has said that the district judge didn't do enough, Judge Brown, in fact, convened a hearing. She questioned the government about the reasons for why it needed additional time. She specifically wanted to know how much time was needed. She was clearly cognizant of Mr. Williams' desire to proceed to trial as quickly as possible. And she asked the government, okay, exactly how much time do you need? And the government explained that there were two witnesses that were unavailable and that, in fact, additional time was needed for those crime labs to complete a DNA analysis on a couple of the items that were found after the bank robbery. Judge Brown said, okay, how much time do you need? Thirty days for those crime labs to complete their process, and she set that trial right within that 30-day window. Now, when the trial moved again, ultimately, to April 1st, that was because of several motions that Mr. Williams filed. And the district judge again explained to Mr. Williams that he absolutely had the right to pursue those motions, but if he did so, there would be this tension with his desire to have the trial go forward quickly. All in all, I think Judge Brown adequately, thoroughly reviewed the bases for the continuance, and even if we get to that issue, that, in fact, her ruling on that motion was a sound one. Unless there are any further questions, I would submit on the briefs. All right. Thank you. Thank you, Your Honors. Your Honors, just very briefly, regarding the equivocation issue, there's a case that's called U.S. v. Adams that's actually referenced in the Mendez-Sanchez case that talks about when a defendant is clearly just changing his mind but not being unequivocal when he does so. In that case, a defendant had appointed counsel he didn't like. He said, I want to represent myself. And then the court said, okay, that's fine. And then later, apparently getting cold feet, the defendant said, you know what, I do want a lawyer to represent me. And the court said, okay, then we can make your same lawyer available to you. And the defendant again said, never mind, I'll represent myself. What the court said in Adams was that's not equivocation because what he's saying is clear. He's saying I either want new counsel or I'm going to represent myself. And that's in contrast to this case where our client was equivocating even in spite of the fact that the court was offering to appoint him different counsel. Let me ask you something. This is rebuttal, huh? What are you rebutting? What Ms. Sussman had to say about the equivocation issue at the very beginning of her argument. And as far as Pete and Vaux are concerned in terms of whether or not they've created this bright-line rule that overrules Clymer or disapproves of Clymer, I would again point out Lewis is a case that came out after Vaux that cited Clymer, that applied Clymer. Vaux itself said that didn't purport to overrule Clymer. It actually said Clymer still applies in that unique case and that unusual circumstance. And that's what we have here. At that point, unless there are any other questions from the Court, I'll submit it. Thank you. And now we'll come to number five on the calendar, United States v. Tafoya Gonzales.
judges: Goodwin, Pregerson, Wardlaw